# FIRST NATIONAL BANK OF COEBURN v. A. S. HARTSELL et al.

Eastern Section.   January 23, 1932.

Petition for Certiorari denied by Supreme Court, July 2, 1932.

Divine & Guinn, of Johnson City, and Burrow & Burrow, of Bristol, for appellants.

Sells, Simmonds & Bowman, of Johnson City, for appellee.

PORTRUM, J. We are confronted with a motion to strike the Bill of Exceptions because it affirmatively appears that it does not contain all the evidence. We defer this question for the reason an assignment of error contains an alleged error in practice which fully appears in the decree of the court, and is a part of the technical record. An error appearing in the technical record is disposed of in the absence of the Bill of Exceptions. The First National Bank of Coeburn brought suit against an endorser, the defendant A. S. Hartsell, to reduce to judgment two notes of $1000 each, executed by George H. Pepper, with Hartsell as an accommodation endorser. Copies of the notes were attached as exhibits to the bill. Hartsell answered admitting the execution of the notes, but averring the maker had lodged with the bank a note for $1500, payable to himself, as collateral security to the notes in suit, and that the defendant had offered to pay the notes upon which he was endorser, and upon which he was sued, upon the surrender to him of the collateral, and the bank had declined to surrender the collateral. And to avoid the development of these facts the bank had not made George H. Pepper, the maker, a party defendant, but had sued only the endorser. Hartsell filed his answer as a cross-bill, making George H. Pepper a defendant, and prayed that the collateral be surrendered to him or applied upon the two notes on which he was liable. The bank answered the cross-bill and averred that Mr. Pepper was insolvent, and for this reason it had not made him a party; it averred that Mr. Pepper, as an officer and stockholder of the Bondtown Coal Company, was indebted to the bank upon his obligation as endorser for the corporation, and individually, and that the company had procured more credit at the bank than it was entitled to, and the bank called upon Mr. Pepper for additional collateral to secure its paper, and that he, as an officer of the company, placed with it the note for $1500 executed by Mrs. Wiley and Mrs. Warren, known as the Wiley and Warren notes. Stating: ''And this cross-defendant says that the note of Mrs. Wiley and Mrs. Warren was and is now held by it as collateral security to the obligation of the Bondtown Coal Company, and that no part of said note is held by it as security for the obligation sued upon herein.''

By order of court the position of the defendant Pepper was changed from that of a defendant to that of a cross-complainant. The cross-complainant Hartsell demanded a jury to try the issues. (The cross-

complainant Hartsell will hereafter be designated as the defendant, and the bank as the complainant.)

Hartsell submitted issues of fact, when the bank excepted to these issues, and the Chancellor, by order, drafted the issues to be submitted to the jury. There are three in number, namely:

1. Did George H. Pepper, as the holder of a note for $1500 drawn in his favor by Mrs. Susie Wiley and Mrs. Ruby Warren, place the same with the complainant bank as collateral security to the note of the Bondtown Coal Company, a corporation in which he was a stockholder and an officer;

2. Or did he place said note with said bank as collateral security to his individual note in favor of said bank;

3. Or did he place said note with said bank without instructions as to the particular note or notes to which it should be applied?

In due time the case was called for trial, and the jury impanelled, when the complainant introduced its two notes sued upon, and rested. The defendant Hartsell and George H. Pepper then testified in behalf of the defendant. At the conclusion of the defendant's evidence the complainant made a motion for a directed verdict. The court directed the jury to answer the last, or third, issue of facts in the affirmative, which it did. The jury was then discharged; and after a discharge of the jury the bank applied to be allowed to introduce its evidence upon the issues raised in the cross-bill. The defendant objected to this course, but the Chancellor being of the opinion that there was an issue of fact involved, that was not reflected by any issue submitted to the jury, permitted the bank to introduce its proof. As we have stated, the technical record detailed the procedure followed, and for this reason we copy a large portion of the decree:

"In this cause, the defendants heretofore demanded a jury to try the issues of fact involved in the pleadings, and the cause came on to be further heard on the issues of fact made up by the parties and submitted to the court, being the same issues submitted to and tried by a former jury in the cause.

"And thereupon, on the 8th day of May, 1931, came the parties and the following jury, all good and lawful men, . . .

"And the complainant bank offered the notes sued upon in the cause and rested. Thereupon the defendant and cross-complainant offered their proof and at the conclusion of the evidence offered by the cross-complainant, Hartsell, et al., the cross-defendant, First National Bank of Coeburn, moved for peremptory instructions for a directed verdict, directing the jury to return a verdict or answer in its favor on the issues submitted

to the jury, and said issues being as follows: (The issues are hereinabove stated.)

"And after argument of said motion the court directed the jury to answer said issue: 'George H. Pepper placed said notes in said bank without instructions as to the particular note or notes to which it should be applied.' Thereupon the jury answered the interrogatory or issue as directed by the court, to all of which action the cross-complainant then and there excepted.

"Following the action of the court in directing a verdict, the complainant bank was allowed to introduce testimony to show that it applied the Warren and Wiley note as collateral security to notes executed by the Bondtown Coal Company, which said corporation's paper was endorsed by Mr. George H. Pepper, and that said Warren and Wiley note was so placed as collateral to the Bondtown notes at the time the pledge was made and with the knowledge and acquiescence of the pledgor. Defendants objected to the evidence for the reason that a jury had been demanded to try the issues and the evidence was incompetent for that reason, and that it was improper to hear oral testimony after a directed verdict. The cause was taken under advisement and after consideration of all questions involved, the court is of the opinion that it was proper to hear said evidence and consider the same in rendering the decree for the reason set forth in the court's memorandum opinion and finding of facts this day filed and made a part of the record in the cause, and which opinion will be made a part of the transcript in the case of an appeal." (We omit the remainder of the decree.)

The Chancellor said this in his memorandum opinion:

"Upon further consideration, the court is of the opinion that the additional evidence was upon a determinative issue, not asked for, and not submitted to the jury, and that the evidence was properly received. The defendant, Hartsell, demanded a jury to try the cause, and upon oral evidence, and having failed to submit determinative issues he is in no position to complain because the case was allowed to be developed by oral evidence upon issues determinative of the case.

" 'It is the duty of a party applying for a jury to submit a proper issue, for otherwise neither the Chancellor nor this court will be bound by the verdict, and the cause may be decided without a repleader.' Doss v. Mason, 4 Sneed, 509; Ragsdale & Co. v. Dossett, 5 Lea, 729-39.

" 'But if the party applying for a jury fails to submit proper issues, the verdict will necessarily be immaterial, and the court

may determine the issue as though no jury trial had taken place, if the record is in condition to justify that course.' First National Bank v. Oldham, 6 Lea, 718.''

As we understand these cases, as defining the practice in the Chancery Court in jury trials, when a party submits immaterial issues he waives, or loses his right to a trial by a jury, and the Chancellor may disregard the verdict and try the issues of fact which are material as if there had been no jury. Doss v. Mason, supra. But where the issues are material then the party is entitled to a verdict of the jury upon the issues submitted, and the verdict cannot be disturbed except as a verdict in a common law court is disturbed. First National Bank v. Oldham, supra; Wright v. Construction Co., 138 Tenn., 145, 196 S. W., 488.

Where the case is a jury case, then the statute provides the procedure:

"Sec. 6283 (Shannon's Code). If the demand is made in the pleading, the cause shall be tried at the first term before a jury summoned instanter, in the same way that jury causes are tried at law.''

If this case is in fact a jury case then this statute would define the practice. We do not think a party loses his right to a trial by a jury upon determinative issues because he has not submitted an additional determinative issue favorable to the opposing party. Section 6282 of Shannon's Code provides: ''Either party to a suit in Chancery is entitled, upon application, to a jury to try and determine any material fact in dispute, and all the issues of fact in any case shall be submitted to one jury.'' The statute says ''any material fact in dispute,'' so if any of these three issues of fact which were submitted to the jury is material then, we think, the applicant was entitled to the verdict of the jury upon that issue. The statute does not say ''all material facts in dispute.''

The three issues submitted to this jury were each material issues; the first and second issues, if answered by the jury, were determinative in the sense of conclusive determinative issues. The third, being answered in the affirmative, raised another issue, i. e. did the bank exercise its right to apply the collateral to a note to cover its debt? But this fourth issue is not conclusive, because the bank's evidence shows the collateral was applied to a note of the Bondtown corporation, which had attached to it additional collateral, and there is no evidence to show that this note has or has not been paid, or that the additional collateral has or has not been realized upon, or whether it would satisfy the claim, and leave the collateral in dispute free from application. Had the jury been then permitted to pass upon the first issue submitted to it, after the introduction of all the proof, it may

have answered this issue in the negative, and there would have been some evidence to support it in view of the above statement of the proof. But the Chancellor answered the first issue, in effect, in the affirmative and dismissed the cross-bill; the decree recites: "That said Warren and Wiley note was so placed as collateral to the Bondtown notes at the time the pledge was made and with the knowledge and acquiescence of the pledgor." Had the defendant had a legal opportunity to have cross examined the witnesses, and have introduced other proof before the jury upon this issue, it may have decided the issue otherwise. He was denied this legal right; the Chancellor in his memorandum states the defendant was present and had an opportunity to cross examine the witnesses, and introduce other evidence, but the jury was absent, and it was the trier of the facts presented by the issues.

As hereinbefore stated the statute provides that a jury trial in chancery shall be tried "in the same way that jury causes are tried at law." At law when a party makes a motion for a directed verdict and it is overruled, and he introduces his evidence, then the court may look to his evidence to make out a case for the plaintiff, for the introduction of the evidence waives the motion made at the conclusion of the plaintiff's evidence. Had the defendant Hartsell made a motion at the same time for a directed verdict, then the court having directed a verdict upon the last issue would have been required to make the application of the collateral, from the facts in proof, and he would not have been justified in entertaining a motion on behalf of the bank to defer action upon Hartsell's motion for a directed verdict, until the bank could introduce evidence to establish an application of the collateral to a more precarious debt, and therefore relieve the court of the duty of making the application.

It does not require any further statement, or argument, to demonstrate that the practice pursued in this case is an innovation, unsupported by a good reason to justify it, as well as an unsafe precedent. We think it is a denial of the right of trial by a jury granted by the aforementioned statute.

The defendant Hartsell failed to make a motion for a directed verdict, so in no event would he be entitled to a judgment in this court, his only relief is a new trial, which is granted him. The decree of the lower court is reversed at the cost of the appellees, and the case is remanded for a new trial. The appellees will pay the cost of appeal, and also pay the cost of the trial below to date.

Snodgrass and Thompson, JJ., concur.