STATE *ex rel.* SULLIVAN *v.* COCKE *et al.*

(*Nashville,* December Term, 1933.)

Opinion filed March 10, 1934.

JOHN E. FISHER and JOHN M. BATES, both of Nashville, for plaintiff.

ROY H. BEELER, Attorney General, and EDWIN F. HUNT, Assistant Attorney General, for defendants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a *habeas corpus* proceedings brought on the relation of J. O. Sullivan to procure the release of his brother Dave Sullivan from the criminal division of the Central State Hospital for the Insane. The commissioner of institutions, the warden of the penitentiary, and the superintendent of the Central Hospital were named as parties defendant. The trial judge dismissed the petition for *habeas corpus*.

The relator undertakes to bring the case before this court by petition for *certiorari*. This practice is not authorized, since section 9716 of the Code provides that any party in any *habeas corpus* case shall have the right of appeal. There is accordingly no necessity for invoking a writ of *certiorari*, but the Assistant Attorney General, representing the state officers, expressly waives any question upon the procedure followed by relator, and we accordingly treat the case as before us on appeal.

Dave Sullivan was convicted of robbery and sentenced to a five-year term in the penitentiary. He was received into that institution on October 23, 1930. With proper credits, his sentence expired December 22, 1933. He was

transferred to the Central State Hospital for the Insane in September, 1933. This transfer was made under authority of section 4476 and section 4502 of the Code.

In disposing of the petition for *habeas corpus,* as appears from his judgment, the court below finds "that the said Dave Sullivan is now insane to such a degree that he would be dangerous to the public and to himself if permitted to go at large." The judgment also recites that the case was heard upon the pleadings and upon "oral testimony and briefs and arguments of counsel." No bill of exceptions preserving the evidence heard by the court below was taken. The record presented to us contains only the pleadings and the judgment.

It is said by counsel for the relator that no evidence was heard in the lower court. It is said by the Assistant Attorney General that the lower court did hear testimony from Dr. Farmer, superintendent of the Central State Hospital. The recitation of the judgment that the case was heard upon *oral testimony* is conclusive of this matter and such recitation cannot be impeached. Upon the record before us, therefore, we must deal with Dave Sullivan as being insane to such a degree that it would be dangerous to the public and to himself if he were permitted to go at large.

Section 4476 of the Code provides:

"When a convict becomes insane, he may be committed to the hospital of the district from which he was convicted, and charged to the county where convicted, if a county patient. The prison physician and warden shall determine and certify his insanity. When sanity is restored he shall be returned to the prison and complete his term, being allowed credit for the period of his insanity."

The hospital for the criminal insane was established by chapter 105 of the Public Acts of 1929, to be operated as a branch of the Central State Hospital for the Insane. That act provided for the confinement in the new institution of "such inmates of the two State Penitentiaries and the State Training and Agricultural School as may be transferred thereto by the Commissioner of Institutions, after being adjudged insane by the superintendent and by the physician of the institution from which they are transferred." Section 2.

██ ██ It is first urged in behalf of relator that these statutes are invalid under article 1, section 8, of the Constitution, providing "That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land."

We do not think, under this section of the Constitution, that the rights of the relator were transgressed by his transfer from the penitentiary to the hospital for the insane. He had already been deprived of his liberty for a term of years by the judgment of his peers. The Constitution did not confer any right upon him to select his place of confinement. It was entirely competent for the Legislature to provide that he be removed from the penitentiary to the hospital for the insane when, upon medical examination, his condition required. Such a transfer was in his own interest, carrying him to a place where he could have better treatment and care.

██ We think that the order of the prison officials and the physician directing the transfer of a convict from the penitentiary to the hospital for the insane could not, in

itself, serve as a justification for detaining him in the hospital beyond his term of imprisonment.

We are confronted in this case, however, with the finding of the lower court that Dave Sullivan is now insane to such a degree as that his release would be dangerous to the public and to himself. In the absence of the evidence upon which the lower court based it, such finding of course cannot be reviewed.

Regardless of the legality of the original commitment of an insane person, it is said in many well-considered cases that he will not be set at liberty under a writ of *habeas corpus* if his going at large will be dangerous to himself or to other people. Such person will be detained in confinement, at least temporarily, to permit a lawful investigation of his condition and a lawful commitment if justified. *In re Boyett,* 136 N. C., 415, 48 S. E., 789, 67 L. R. A., 972, 103 Am. St. Rep., 944, 1 Ann. Cas., 729; *In re Allen,* 82 Vt., 365, 73 A., 1078, 26 L. R. A. (N. S.), 232; *Ex parte Dagley,* 35 Okla., 180, 128 P., 699, 44 L. R. A. (N. S.), 389. Other cases to like effect are collected in a note in 44 L. R. A. (N. S.), 389, and a note in 43 Am. St. Rep., 531.

In many of the cases just referred to, it is observed that a private individual may restrain or confine a person violently insane, in an emergency, until proper proceedings to deal with the lunatic's case are instituted. One of the English judges remarked: "I should be abusing the name of liberty if I were to take off a restraint for which those who are most interested in the party ought to be most thankful." *In re Shuttleworth,* 9 Q. B., 651.

For the reasons stated, this court is unwilling to interfere with the order made by the court below herein.

This leaves Dave Sullivan in the temporary custody of the Central State Hospital for the Insane. It is suggested that, if those in charge of that institution think that Sullivan should be confined there for any considerable length of time, such officials would be in the discharge of their duty if they caused proper legal proceedings to be instituted to determine and adjudicate the question of the man's mental condition. If the relator desires a speedy determination of this question, sections 9656 *et seq.* of the Code, provide a method. Or, the relator may file another *habeas corpus* petition, but this court cannot review a *habeas corpus* proceedings, unless the evidence heard is properly preserved.

The petition for *certiorari* is accordingly denied.